# EXHIBIT "A"

UNITED STATES OF AMERICA      :
                                           :
                                           :       CRIMINAL ACTION
      v.                                  :       NO. 21-132
                                           :
                                         :
MURTY VEPURI                       :
ASHVIN PANCHAL               :
KVK-TECH, INC.                   :

## REPORT AND RECOMMENDATION OF THE SPECIAL MASTER AS TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING 61 DOCUMENTS ON PRIVILEGE LOG VOLUME 2

GREGORY P. MILLER, Special Master.

Currently before the Special Master is the Defendants' Motion for Protective Order Regarding 61 Documents on Privilege Log Volume 2 ("Defendants' Motion") filed by defendants KVK Tech, Inc. ("Company" or "KVK"), Murty Vepuri ("Mr. Vepuri") and Ashvin Panchal ("Mr. Panchal"). The Special Master recommends the Court deny the Defendants' Motion.

### I.      Background

On November 3, 2021, the Court entered an order establishing a protocol to govern "the filter review and disclosure of materials seized from the premises of KVK pursuant to three search warrants issued on July 27 and 29, 2021 in Case Nos. 21-mj-1220-1, 2, 3." ("Filter Team Protocol Order"). The Filter Team Protocol Order provides that, "If the parties cannot come to an agreement as to an asserted privilege claim, the defendants will file a motion within 10 business days with the Special Master, to be appointed by the court, for a protective order preventing the release of the disputed document(s) to the Prosecution Team." Filter Team Protocol Order at 4, EFC No. 87. The Order further provides "The Briefing schedule, including any oral argument,

will be set by the Special Master in consultation with the parties." *Id.* On December 1, 2022, the Special Master was appointed "to decide, in the first instance, disputes between the parties concerning issues of attorney-client privilege, attorney work product, or any other recognized privilege." Special Master Order, EFC No. 92.

Beginning on February 18, 2022, the Defendants began submitting letters informing the Special Master of disagreements between the parties on the privileged status of certain documents identified on the Defendants' Privilege Logs and the adequacy of the disclosures contained in those privilege logs. On April 11, 2022, the Special Master issued Case Management and Scheduling Order No.1 that encouraged the parties to continue negotiations regarding the privilege log disclosure issues and established a schedule for the submission by Defendants of a Motion for Protective Orders related to Privilege Log Volumes 2 & 5. After additional negotiations related to Privilege Log Volumes 2 & 5, the dispute now is limited to 61 documents identified in Privilege Log 2.

On April 19, 2022, the Defendants submitted Defendants' Motion for Protective Order Regarding 61 Documents on Privilege Log Volume 2 ("Defendants' Motion"). In this Motion, the Defendants assert all 61 documents ("Disputed Documents") are protected by the attorney-client privilege and the work product doctrine. The Special Master requested the Defendants submit the Disputed Documents for an *in-camera* review. *See United States v. Zolin,* 491 U.S. 554, 569 (1989) (Approving the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection). The Defendants also submitted documents, KVKSW3-00028832, for *in camera* inspection. The Special Master did not consider these documents since they were not at issue in the Defendants' Motion.

In support of their Motion, the Defendants submitted a letter from Mr. Panchal's attorney, Patrick J. Egan, Esquire, that states, in part, the Disputed Documents "were assembled by Mr. Panchal at the direction of KVK's outside counsel during the criminal investigation that led to charges against him and his two co-Defendants in Criminal Action No. 21-132. Defendants' Mot. at 1 Ex. A. (February 28, 2022, letter from P. Egan.). The letter also states "the documents were stored in hard copy in a box that was seized from Mr. Panchal's office during the execution of the July 27, 2021, search warrants." *Id.* The Defendants assert the facts outlined in Mr. Egan's letter and relevant caselaw support their position the Disputed Documents are protected by attorney-client privilege and the work product doctrine.

On May 3, 2022, the Filter Team filed the Government Filter Team's Opposition to Defendants' Motion for Protective Order Regarding 61 Documents on Privilege Log Vol. 2. ("Filter Team's Opposition"). The Filter Team argues the Defendants' Motion should be denied because it seeks to "claim attorney-client privilege and work product [protection] over documents that have no protection on their own, solely because [KVK's] employee allegedly collected them in response to a request from an attorney." Filter Team Opp'n at 1. The Filter Team asserts the facts and case law submitted by the Defendants fail to establish the Disputed Documents are protected by either the attorney-client privilege or the work product doctrine.

The Filter Team further argues that even if the Disputed Documents are determined to be protected by the work product doctrine, the disclosure of these documents would still be appropriate because the Prosecution Team "has substantial need for [these] materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)) *Id.* at 12. In support of this position, the Filter Team states that neither the Filter Team nor the Defendants have been able to find other copies of the

Disputed Documents in the materials seized from KVK's facility. *See* Filter Team Opp'n at 12-13.

## II.    Legal Standards

### A.    Attorney-Client Privilege

The attorney-client privilege protects from disclosure of confidential communications made between attorneys and clients to obtain or provide legal assistance to the client. *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 359 (3d Cir. 2007). Although such communications may be both relevant and highly probative of the truth, they are shielded from production in order "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

Nevertheless, because " the attorney-client privilege obstructs the truth-finding process, it is construed narrowly'" and "is 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Fed. Trade Comm'n v. AbbVie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *2 (E.D. Pa. Dec. 14, 2015) (Bartle, J.; unpublished) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 472 (E.D. Pa. 2005); and *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)). "The elements necessary to establish the attorney-client privilege are settled.

> (1) (When) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. (Emphasis added)" (citing J. Wigmore, Evidence s 2292 at 554 (1961)."

In the Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469 (3d Cir. 1979). "The party asserting the attorney-client privilege 'bears the burden of proving that it applies to the communication at issue.'" *AbbVie*, 2016 WL 4478803, at *2 (E.D. Pa. Aug. 25, 2016) (quoting *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 259 (E.D. Pa. Dec. 9, 2008) and *Sampson v. Sch. Dist.*, 262 F.R.D. 469, 473 (E.D. Pa. Nov. 5, 2008) and citing *In re Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979)).

The privilege "applies to communications by a corporate employee concerning matters within the scope of duties purposefully made to enable an attorney to provide legal advice to the corporation." *Pennsylvania Transp. Auth. v. Caremarkpcs Health, L.P.,* 254 F.R.D. 253, 257 (E.D. Pa. 2008). The attorney-client privilege "may also extend to certain 'documents, [that] while not involving employees assisting counsel, still reflect confidential communications between client and counsel or subordinates of counsel for the purpose of either (1) providing legal services or (2) providing information to counsel to secure legal services.'" *Id*.

### B. Work-Product Doctrine

The work product doctrine protects documents "(1) created in reasonable anticipation of litigation by or for a party and (2) prepared primarily for the purpose of litigation." *AbbVie*, 2015 WL 8623076, at *4 (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)). This doctrine applies in criminal, as well as civil, litigation. *See United States v. Nobles,* 422 U.S. 225 236 (1975)).

The relevant inquiry is whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation," *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (citation omitted), and the party asserting the protection must make this showing, *SmithKline*, 232 F.R.D. at 473 (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)). The work product doctrine "advances the cause of justice and

gives life to the Sixth Amendment right to effective assistance of counsel." *Vepuri,* 2021 WL 4860744, at *2 (citing *United States v. Nobles,* 422 U.S. 225, 237-38 (1975)).

The work product doctrine is "distinct from and broader than the attorney-client privilege" in that it immunizes from discovery documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." *SmithKline Beecham Corp.,* 232 F.R.D. at 473. In undertaking an analysis of the applicability of this doctrine, a court must determine with specificity the motivation in creating and maintaining the document at issue. *See United States v. Rockwell,* 897 F.2d 1255, 1266 (3d Cir. 1990). The Court also must determine "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings (FMC Corp),* 604 F. 2d 798, 803 (3d Cir. 1979). (citation omitted).

"The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3)." *In re: Cendant Corporation Securities Litigation,* 343 F3d 658, 661 (2003). "Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is generally afforded near absolute protection from discovery." *Id.* at 663. (citation omitted).

The work product doctrine is not an absolute bar to the discovery of material prepared in anticipation of litigation." *Id.* "Work product can be produced

upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials, when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P.26(b)(3)." *Id*. Opinion work product "is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Sporck v. Peil,* 759 F.2d 312, 316 (3d. Cir. 1985). "Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *In re Cendant,* 343 F. 3d at 663.

## III. Discussion

### A. Defendants' Attorney-Client Privilege Claim

The foundation for the Defendants' Motion primarily rests on the factual assertions contained in Mr. Egan's letter. As an initial issue, it is not clear whether a letter from counsel rather than an "affidavit or declaration" is a sufficient basis for this Motion. See *Abbvie* at 1-2. But assuming it is, the letter fails to supply the facts necessary for the Defendants to meet their burden of proving the attorney-client privilege applies to the Disputed Documents.

 Mr. Egan, in his letter, states, in part, the Disputed Documents "were seized from a box of documents located in Mr. Panchal's office during the search. The materials are labelled 'Box is from Ashvin Panchal During April/May 2019 for Hydroxyzine HCL." The materials seized from this box are a compilation of documents that Mr. Panchal collected in connection with the government investigation of him. The investigation, which resulted in

the charged case, focused on, among other things, Hydroxyzine. Mr. Panchal collected those documents at the request of company counsel in order to provide information relevant to the investigation. Given that the investigation was ongoing in 2019, the documents were collected specially in anticipation of litigation." Defendants' Motion at 1. Ex. A. (February 28, 2022, letter from P. Egan.).

The Defendants argue that Mr. Egan's letter is sufficient to prove Mr. Panchal gathered the Disputed Documents as a result of a request from the company counsel. Thus, the Defendants submit "[t]he central inquiry" – whether there was a communication made between an attorney and a client for the purpose of obtaining legal advice – is clearly satisfied here." (citation omitted). *Id.* at 5. The Defendants further argue the remaining elements necessary to establish the attorney-client privilege are met since "the communication relates to a fact of which the attorney was informed without the presence of strangers for the purpose of obtaining legal advice, and KVK has not waived the privilege (through Mr. Panchal or otherwise)." *Id.* The application of the attorney-client privilege to the Disputed Documents, the Defendants submit, is necessary "because disclosing the documents to the Prosecution Team would reveal the substance of KVK's attorney's communication to his client through Mr. Panchal (i.e. the contours of the attorney's request to gather particular documents), and the substance of KVK's implied communication back to its outside counsel identifying the selected documents as responsive to the attorney's request." *Id.* at 5-6.

The Filter Team argues the Defendants' claim that company counsel requested the disputed documents is based on "an unsupported statement of Mr. Egan that lacks specificity." Filter Team Opp'n at 6. In this statement, the Filter Team notes "Mr. Egan does not claim to have any involvement in making or responding to this purported request from the company's counsel

or even to have ever seen any communication relating to it." *Id.* The Filter Team further argues, KVK fails to identify this unnamed "company counsel" as any particular person or law firm, despite, what it contends, is the clear legal requirement "that KVK must 'identify a specific attorney with whom a confidential communication was made in order to satisfy [its] burden' that the attorney-client privilege applies." *Id.* at 6-7. (citations omitted). The Filter Team also notes that neither KVK or Mr. Egan "provide any information about what request that unnamed attorney made of KVK or how that attorney conveyed the purported request, which information would also be necessary to provide the specific identification a claim of privilege requires." *Id.* at 7.

The Defendants' submission fails to provide sufficient information to substantiate their assertion that the attorney-client privilege protects the Disputed Documents. *See Fed. Trade Comm'n v. AbbVie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015) (Bartle, J.; unpublished); *see also FTC v. AbbVie, Inc.*, No.CV 14-5151, 2016 WL 4478803, at *11 (E.D. Pa. Aug. 25, 2016) (unpublished) ("Abbvie once again has not provided sufficient information for us to find that the privilege applies to these documents. [The attorney's] declaration concludes that these communications contain requests for legal advice without providing context to substantiate her contentions.").

The Defendant's failure to identify the "company counsel" is significant because it is important for the party asserting the privilege to "identify a specific attorney with whom a confidential communication was made in order to satisfy [its] burden" that the attorney-client privilege applies. *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 259 (E.D. Pa. 2008) (internal quotations omitted); see also *SmithKline,* 232 F.R.D. at 477. The Defendants failure to provide any information on how this request was conveyed or any details on the purpose or

scope of the request, also fails to provide substantiation for their argument that disclosing the Disputed Documents to the Prosecution Team would reveal the substance of the "company counsel's" communication with Mr. Panchal.

Finally, the Defendants also failed to establish the requested documents, once accumulated, were ever sent to the requesting company counsel. It appears from the facts submitted, that the Disputed Documents simply sat, for an extended period, in Mr. Panchal's office. *See Martin v. Bally's Park Place Hotel & Casino,* 983 F. 2d 1252, 1260 (3d Cir. 1993). (In applying the doctrine, courts consider the nature of the document for which protection is sought and the facts surrounding its creation and distribution).

### B. Defendants' Work Product Doctrine Claim

The Defendants' basis for asserting the Disputed Documents are protected under work product doctrine also primarily rests on the factual assertions contained in Mr. Egan's letter. Based on those asserted facts, the Defendants argue the Disputed Documents are entitled to the "highest level of protection as opinion work. Defendants' Mot. at 8. The Defendant's argument that they meet this higher standard is based on the Third Circuit's decision in *Sporck v. Peil,* 759 F. 2d 312 (3d Cir. 1985). In Sporck, the Third Circuit held "[t]he 'selection and compilation of' documents that may not on their own be privileged are nonetheless entitled to work product protection where they are gathered in anticipation of litigation" *Id.* at 315. "Not only are such documents subject to work product protection, they receive the highest level of protection as opinion work product." Defendants' Mot. at 7-8. (citations omitted).

In challenging the Defendants' assertion that the Disputed Documents are protected from disclosure by the opinion work product doctrine, the Filter Team argues, Mr. Panchal's collection of the Disputed Documents "does not show any selection process based mental impressions and

legal strategies concerning the defense of the case, much less show that the documents themselves would somehow reveal those impressions or strategies." Filter Team Opp'n at 11. The Filter Team further contends the Defendants' reliance on *Sporck* is misplaced since that case "dealt with a request for production of the specific set of documents that an attorney had selected to use to prepare the client for deposition." *Sporck,* 759 F.2d at 315.

In addition, the Filter Team seeks disclosure of the Disputed Documents, even if the Defendants have established the Disputed Documents are protected by the work-product doctrine, "because the Prosecution Team 'has substantial need for [these] materials to prepare its case and cannot, with undue hardship, obtain their substantial equivalent by other means." Filter Team Opp'n at 12. (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)). In support of this request, the Filter Team submits, "The Disputed Documents are factual records pertaining to KVK's manufacturing of Hydroxyzine Hydrochloride, and they are important to the government's ongoing criminal investigation of KVK." *Id.*

The Defendants have failed to establish the Disputed Documents are protected opinion work product. First, the Defendants reliance on *Sporck* is misplaced. As noted by the Filter Team, *Sporck* involves the selection and compilation of the documents performed by an attorney that reflect his mental impressions, conclusions, opinion, or legal theories. By contrast, the Defendants have failed to provide any evidence on the identity of the company counsel or what instructions, if any, were given to Mr. Panchal. In addition, the Defendants failed to provide any evidence that the Disputed Documents were ever provided to the "company counsel" upon whose request they were collected. *See Martin v. Bally's Park Place Hotel & Casino,* 983 F. 2d 1252, 1260 (3d Cir. 1993). Accordingly, their submission fails to provide sufficient information to substantiate their argument the opinion work product doctrine protects the Disputed Documents.

Although the Defendants' submission fails to substantiate the applicability of the opinion work product doctrine, it provides sufficient support for the Defendants' argument that the Disputed Documents are protected by the "first tier" or ordinary work product doctrine. According to Mr. Egan, "Mr. Panchal collected those documents at the request of company counsel in order to provide information relevant to the investigation." Defendants' Motion at 1. Ex. A. (February 28, 2022, letter from P. Egan.). Therefore, it can be fairly said the Disputed Documents were "prepared or obtained because of the prospect of litigation," *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (citation omitted). *See also In re Grand Jury Proceedings (FMC Corp),* 604 F. 2d 798, 803 (3d Cir. 1979).

Based on the Special Master's review, it also is clear the Disputed Documents are more than a purely random collection of documents. While the documents are similar in nature and relevance, they appear to have been collected from various sources. Although the Defendants failed to provide any basis for evaluating what criteria Mr. Panchal used to select the Disputed Documents, it is clear they were collected because of the prospect of litigation.

### C. Filter Team's Substantial Need/Undue Hardship Claim

Since the Defendants only have established the "first tier" or ordinary work product doctrine protection for the Disputed Documents, the Filter team is not required to meet the heightened showing of extraordinary circumstances. See *Sporck v. Peil*, 759 F.3d 312, 316 (#d Cir. 1985). The Disputed Documents are subject to disclosure where a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The Filter Team asserted "The Disputed Documents are factual records pertaining to KVK's Manufacturing of Hydroxyzine Hydrochloride, and they are important to the government's ongoing criminal

investigation of KVK." Filter Team Opp'n at 12. The Filter team further submits, "In fact, the search warrant the government was executing when it seized these records from KVK's facility specifically identified '[m]anufacturing and distribution records relating to Hydroxyzine Hydrochloride tablets,' and "[r]ecords related to the purchase and use of …API Hydroxyzine Hydrochloride" as evidence that the Government was seeking. *Id*.

The Filter Team's description of the Disputed Documents was confirmed during the Special Master's review. The subject matter of the Disputed Documents appears related to the subject matter of the documents identified in the search warrants the Government was executing when it seized records from KVK's facility. The Special Master's review also confirmed that the Disputed Documents did not reference a privileged communication or include any commentary, legal analysis, or notes to or from any attorneys.

The Filter Team has met its burden in establishing the Government's extraordinary need for the Disputed Documents. In addition, the Government's inability to secure the information contained in the Disputed Documents from another source establishes these records cannot be recreated or obtained from other sources. *See* Fed.R.Civ.P.26(b)(3). *See also In re Grand Jury Investigation*, 599 F. 2d 1224, 1232 (3d. Cir. 1979). Accordingly, the Prosecution Team should be granted access to the Disputed Documents.

## IV.    Recommendations

For the foregoing reasons, the Special Master recommends that the Court:

(1) Deny the Defendants' Motion for Protective Order; and

(2) Grant the Government's Prosecution Team access to the Disputed Documents.

Date: <u>June 7, 2022</u>

Gregory Miller, Esquire

/s/ *Gregory Miller, Esq.*

Special Master

## PROOF OF SERVICE BY E-Service

Re: U.S. vs. Vepuri, Murty, et al.
Reference No. 1450008185

I, Amanda Whyte, not a party to the within action, hereby declare that on June 9, 2022, I served the

attached Report and Recommendation of the Special Masters as to Defendants' Motion for Protective Order

Regarding 61 Documents on Privilege Log Volume 2 on the parties in the within action via E-Service at

Philadelphia, PENNSYLVANIA, addressed as follows:

Jack W. Pirozzolo Esq.
Sidley Austin LLP
60 State St
36th Floor
Boston, MA   02109
Phone: 617-223-0300
jpirozzolo@sidley.com
   Parties Represented:
    KVK Tech, Inc

Jeffrey M. Senger Esq.
Becket Marum
Sidley Austin LLP
1501 K St., NW
Washington, DC   20005-1401
Phone: 202-736-8000
jsenger@sidley.com
bmarum@sidley.com
    Parties Represented:
     KVK Tech, Inc

Mathewson A. Lisa
Mathewson Law LLC
123 South Broad Street
Suite 1320
Philadelphia, PA   19109
Phone: 215-399-9592
lam@mathewson-law.com
   Parties Represented:
    KVK Tech, Inc

Patrick J. Egan Esq.
Saverio S. Romeo
Fox Rothschild LLP
2000 Market St.
20th Floor
Philadelphia, PA   19103-3291
Phone: 215-299-2000
pegan@foxrothschild.com
sromeo@foxrothschild.com
    Parties Represented:
    Ashvin Panchal

Justin Danielwitz
Tricia Kazinetz
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market St.   38th Floor
Philadelphia, PA   19102-2186
Phone: 215-972-7777
justin.danilewitz@saul.com
tricia.kazinetz@saul.com

Brien T. O'Connor Esq.
Katherine McDonald
Ropes & Gray
Prudential Tower
800 Boylston St.
Boston, MA   02199
Phone: 617-951-7000
Brien.O'Connor@ropesgray.com
Katherine.McDonald@ropesgray.com

Parties Represented:
Murty Vepuri

Parties Represented:
Murty Vepuri

Beth Weinman
Ropes & Gray
2099 Pennsylvania Avenue, NW
Washington, DC   20006
Phone: 202-508-4600
Beth.Weinman@ropesgray.com
   Parties Represented:
   Murty Vepuri

Speare I. Hodges
United States Department of Justice
Consumer Protection Branch
450 5th Street, N.W. Suite 6400-South
Washington, DC   20044
Phone: 202-307-0174
Speare.I.Hodges@usdoj.gov
   Parties Represented:
   United States

Zachary A Dietert Esq
US Department of Justice
Consumer Protection Branch
450 5th St, NW, Suite 6400-South
Washington, DC   20530
Phone: 202-532-4892
zachary.a.dietert@usdoj.gov
   Parties Represented:
   United States

Louis D. Lappen
Eastern District of Pennsylvania
615 Chestnut Street,
Suite 1250
Philadelphia, PA   19106
Louis.lappen@usdoj.gov
   Parties Represented:
   United States

      I declare under penalty of perjury the foregoing to be true and correct. Executed at Philadelphia,

PENNSYLVANIA on   June 9, 2022.

Amanda  Whyte
/s/  _____
Amanda Whyte JAMS
AWhyte@jamsadr.com

# EXHIBIT "B"

**Defendants' Motion for Protective Order Regarding 61 Documents on
Privilege Log Volume 2, with exhibits
(submitted to Special Master for confidential treatment, April 19, 2022)**

**This document has been submitted to Chambers for *in camera* review.**

# EXHIBIT "C"

**Government Filter Team's Opposition to Defendants' Motion for
Protective Order Regarding 61 Documents on Privilege Log Vol. 2,
with exhibits
(submitted to Special Master for confidential treatment, May 3, 2022)**

**This document has been submitted to Chambers for *in camera* review.**

# EXHIBIT "D"

**Attachment "B" to Search Warrants,
reflecting date limitation**

**This document has been submitted to Chambers for *in camera* review.  *In re Search Warrants*, No. 21-mj-1220, remains under seal.**

# EXHIBIT "E"

**Chart of 61 Documents on Priv. Log Vol. 2 (Panchal Compilation)**

| | Document ID | Date Range |
|---|---|---|
| 1. | KVKSW3-00029021 | January 2013 – April 2013 |
| 2. | KVKSW3-00029072 | April 2013 – July 2013 |
| 3. | KVKSW3-00029123 | July 2013 – January 2014 |
| 4. | KVKSW3-00029174 | January 2014 – March 2014 |
| 5. | KVKSW3-00029196 | March 2014 – June 2014 |
| 6. | KVKSW3-00029217 | June 2005 – December 2010 |
| 7. | KVKSW3-00029230 | January 2014 – May 2014 |
| 8. | KVKSW3-00029281 | May 2014 – October 2014 |
| 9. | KVKSW3-00029332 | October 2014 – December 2014 |
| 10. | KVKSW3-00029383 | January 2011 |
| 11. | KVKSW3-00029386 | January 2011 |
| 12. | KVKSW3-00029388 | January 2011 |
| 13. | KVKSW3-00029402 | January 2011 |
| 14. | KVKSW3-00029408 | January 2011 |
| 15. | KVKSW3-00029414 | January 2011 |
| 16. | KVKSW3-00029419 | January 2012 – June 2012 |
| 17. | KVKSW3-00029471 | June 2012 – September 2012 |
| 18. | KVKSW3-00029523 | September 2012 – October 2012 |
| 19. | KVKSW3-00029574 | October 2012 – December 2012 |
| 20. | KVKSW3-00029625 | February 2018 – March 2018 |
| 21. | KVKSW3-00029704 | March 2018 |
| 22. | KVKSW3-00029751 | March 2018 |
| 23. | KVKSW3-00029753 | March 2018 |
| 24. | KVKSW3-00029765 | March 2018 |
| 25. | KVKSW3-00029777 | March 2018 |
| 26. | KVKSW3-00029789 | March 2018 |
| 27. | KVKSW3-00029801 | March 2018 |
| 28. | KVKSW3-00029813 | March 2018 |
| 29. | KVKSW3-00029825 | March 2018 |
| 30. | KVKSW3-00029837 | March 2018 |
| 31. | KVKSW3-00029851 | February 2018 |
| 32. | KVKSW3-00029863 | February 2018 |
| 33. | KVKSW3-00029875 | February 2018 |
| 34. | KVKSW3-00029887 | March 2018 |
| 35. | KVKSW3-00029933 | March 2018 |
| 36. | KVKSW3-00029943 | March 2018 |
| 37. | KVKSW3-00029946 | March 2018 |
| 38. | KVKSW3-00029971 | March 2018 |
| 39. | KVKSW3-00029987 | March 2018 |
| 40. | KVKSW3-00029990 | March 2018 |
| 41. | KVKSW3-00029993 | March 2018 |
| 42. | KVKSW3-00029997 | March 2018 |
| 43. | KVKSW3-00029999 | March 2018 |
| 44. | KVKSW3-00030006 | March 2018 |
| 45. | KVKSW3-00030030 | February 2018 |
| 46. | KVKSW3-00030039 | February 2018 |
| 47. | KVKSW3-00030048 | February 2018 |
| 48. | KVKSW3-00030058 | February 2018 |
| 49. | KVKSW3-00030072 | February 2018 |
| 50. | KVKSW3-00030081 | February 2018 |

|  | **Document ID** | **Date Range** |
|---|---|---|
| 51. | KVKSW3-00030090 | February 2018 |
| 52. | KVKSW3-00030099 | February 2018 |
| 53. | KVKSW3-00030108 | February 2018 |
| 54. | KVKSW3-00030121 | January 2011 |
| 55. | KVKSW3-00030140 | January 2011 – February 2011 |
| 56. | KVKSW3-00030154 | January 2011 |
| 57. | KVKSW3-00030172 | December 2010 – January 2011 |
| 58. | KVKSW3-00030185 | January 2011 |
| 59. | KVKSW3-00030199 | January 2011 |
| 60. | KVKSW3-00030222 | January 2011 |
| 61. | KVKSW3-00030243 | Multiple documents (all pre-2018; dates include, *e.g.*, 2011 and 2014) |